GARY M. RESTAINO
United States Attorney
District of Arizona
ADDISON SANTOME
Assistant U.S. Attorney
Arizona State Bar No. 031263
40 N. Central Avenue Ste. 1800
Phoenix, AZ 85004
Telephone: 602-514-7599
Email: Addison.Santome@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>     vs.<br><br>Eric Celaya,<br><br>             Defendant. | CR-23-01456-001-PHX-MTL<br><br>**GOVERNMENT'S MEMORANDUM OPPOSING DEFENDANT'S PRE-TRIAL RELEASE** |

The United States of America, by and through undersigned counsel, hereby submits this Memorandum Opposing the Defendant's Pre-Trial Release. This Memorandum is based on the facts and law set forth in the attached Memorandum of Points and Authorities.

Respectfully submitted this 6th of November, 2023.

GARY M. RESTAINO<br>
United States Attorney<br>
District of Arizona<br><br>
<i>s/Addison Santome</i><br>
Addison Santome<br>
Assistant U.S. Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTS AND PROCEDURAL HISTORY.**

On February 17, 2023, Jamie Tran, hereafter referred to as "Tran", was arrested and charged in the Central District of California by complaint (2:23-MJ-00778-DUTY), and subsequently indicted (2:23-CR-00098-GW), for hate crimes related to two shootings that occurred on February 15, 2023 and February 16, 2023.

At approximately 9:45 a.m. on February 15, 2023, Tran drove to the Pico-Robertson neighborhood of Los Angeles, located an individual, identified as "Victim A," who was wearing a black jacket and yarmulke, and had just left religious services at a synagogue. Tran shot Victim A in the back at close range, intending to kill him, but Victim A, though wounded, survived.

The following morning, Tran returned to the Pico-Robertson area, intending to kill another Jewish person. At approximately 8:00 a.m., Tran approached an individual wearing a dark-colored jacket and yarmulke and who is identified as "Victim B." Tran, intending to kill Victim B, shot and wounded Victim B, who survived the attack.

Upon arrest, Tran was in possession of two firearms: (1) a Kahr Arms, .380 caliber pistol, bearing serial number CAA1387; and (2) a Zastava, model M70, semi-automatic rifle, bearing serial number Z70-144818, which were used in the abovementioned crimes. Tran has a history of espousing antisemitic beliefs and has made violent threats towards individuals who actually were, and whom Tran perceived to be, Jewish. Tran admitted to searching for "kosher market" in an attempt to shoot someone in the area. He believed there would be "a lot of Jews there." Tran admitted to getting the firearms in Arizona from some guy he did not know.

Agents collected the firearms transaction record, known as ATF Form 4473, related to the two firearms possessed and used by Tran, and learned these firearms were purchased by the Defendant on January 19, 2023, in a single transaction at Alpha Dog, an FFL in Tempe, Arizona.

On May 23, 2023, agents from the Los Angeles Field Division of the Federal Bureau

of Investigation (FBI), and from the Phoenix Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) interviewed the Defendant at his residence. The Defendant identified Tran as an individual he purchased two firearms for in January 2023. He believed Tran contacted him on Text Now (a messaging application). Tran told him exactly which firearms to purchase and offered him money to make the purchases. They met at Alpha Dog. Tran provided the Defendant with $1500.00 in cash. The Defendant went into the store, completed the paperwork, and left. Once outside, he provided the guns to Tran.

Tran's cell phone was downloaded, and agents located messages between Tran and the Defendant from January 19, 2023. The Defendant asked Tran if he needs someone with a valid identification to purchase guns. Tran agreed to pay the Defendant $225.00 if he purchases a firearm for him. Tran directs the Defendant to Alpha Dog to purchase an AK47. The Defendant sent Tran a text, "Also one last thing I'm buying one AK47 for you". Tran informed the Defendant he is at the Firehouse Subs next to Alpha Dog. Tran then texted the Defendant "Kahr CT380" and sent a picture of an AK 47 on a wall rack. The Defendant responded that he is filling out the paperwork. Tran asked the Defendant to also buy ammo and the Defendant responded, "Yeah man but I think you only gave me enough to cover just the guns". Tran stated he will pay him outside after the purchase. The Defendant purchased and provided Tran both firearms Tran used to commit the abovementioned hate crimes.

On August 28, 2023, ATF agents spoke with the Defendant again to review ATF Form 4473. The Defendant provided the same statement as before. He confirmed he completed the ATF Form 4473. The Defendant also agreed that he straw purchased the firearm for Tran. He said his motivation for making the purchase was financial. At the time the Defendant purchased and provided Tran the firearms, Tran would not have been able to pass the background check due to a mental health hold.

//

## II. LAW AND FACTORS TO BE CONSIDERED.

Title 18, United States Code (U.S.C.) 3142(e) addresses the detention of defendants charged with federal offenses. In relevant part, the statute states that "a judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning the following factors."

### A. The Nature and Circumstances of the Offense Charged

For financial gain, the Defendant purchased and provided two firearms, to include an AK-47 style rifle, to a person he did not know. Although he likely did not know what Tran intended to do with the firearms, there are inherent and real risks with the use and possession of firearms. We recognize and mitigate these risks through federal firearms laws. For example, FFLs conduct background checks, as required, during the purchase of firearms to avoid firearms ending up in the hands of those seeking to harm the community or themselves. However, when the Defendant bought these firearms for Tran, he circumvented those laws endangering the community. But for Defendant's willingness to allow Tran to avoid a background check, Tran would not have been in possession of those firearms.

### B. The Weight of the Evidence Against the Defendant

Although this element is to be given the least weight in the Ninth Circuit, it is still relevant in these circumstances. The weight of the evidence against the Defendant is strong, as he admitted to the indicted conduct (as described above). Further, the Defendant has already been indicted for the offenses at issue.

### C. The Defendant's History and Characteristics

This factor assesses the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial,

sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

In the recent years, the Defendant has been charged on three separate occasions with driving while under the influence (February 2020, January 2021, and August 2023). Additionally, he has admitted to using methamphetamine since he was 25, and until approximately six weeks ago. Although the Defendant is participating in a diversion program and previously completed inpatient treatment, the recency and repetitiveness demonstrate an active addiction.

### D. The Nature and Seriousness of the Danger to any Person or the Community that Would be Posed by the Person's Release

Despite being the victim of a violent assault in 2015, the Defendant readily provided a deadly weapon to a person whom by all accounts he knew wasn't willing to purchase the firearms himself. He demonstrated complete disregard for the safety of the community. He also did not consider the reason why Tran would need a straw purchaser.

### III. RISK OF NON-APPEARANCE AND DANGER TO THE COMMUNITY.

#### A. The Defendant is a Risk of Non-appearance

Although the Defendant does not have any prior failures to appear on his record, his addiction and repetitive misdemeanor history poses a particular challenge with appearing for upcoming court dates. Because prior rehabilitation has been unsuccessful, it does not appear that further treatment will cure this concern.

#### B. The Defendant Poses a Danger to the Safety of the Community

The United States must prove by clear and convincing evidence that the defendant poses a danger to the safety of the community. The pretrial service report recognizes that he does, even if the recommendation is ultimately one of release. The inherent danger of straw purchasing firearms which played out in the facts of this case, demonstrate the danger to the safety of the community posed by the Defendant.

//

## IV. CONCLUSION.

Because the Defendant poses a risk of danger and non-appearance, he should be detain pending trial.

Respectfully submitted this November 6, 2023.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *Addison Santome*____
>
> ADDISON SANTOME
> Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Jeanette Alvarado, *Counsel for the Defendant*

*Addison Santome*
U.S. Attorney's Office